Z.R.L. CORPORATION, d/b/a Greenbay Shipping Company, Plaintiff-Appellee, v. GREAT CENTRAL INSURANCE COMPANY, Defendant-Appellant.

First District (2nd Division) No. 86—2105

Opinion filed June 16, 1987.

Bresnahan, Garvey, O'Halloran & Coleman, of Chicago (Kenneth T. Garvey and Douglas A. Miller, of counsel), for appellant.

Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Z.R.L. Corporation d/b/a The Greenbay Shipping Company (hereinafter insured) filed a declaratory judgment action against Great Central Insurance Company (hereinafter insurer) to determine the rights and responsibilities of the parties under a liability insurance policy. The circuit court granted summary judgment to the insured holding that the insurer had an obligation to defend the insured in a lawsuit being prosecuted against it in Federal district court. We affirm.

The subject policy of insurance, entitled "Restaurant Package Policy," was issued by the insurer to cover the insured's restaurant business, which it operated as a private club, known as "Arthur's Club." The insured was designated "named insured," and the owners of the building in which the club was located were listed as "additional insureds." Under the personal injury liability provisions of the policy, coverage was provided as follows:

"1. Personal Injury Liability

Great Central will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person or organization and arising out of an occurrence involving one or more of the following offenses:

False arrest, malicious prosecution, detention, imprisonment, libel, slander, defamation of character, invasion of privacy, wrongful eviction or wrongful entry,

if such offense is committed in the conduct of the named Insured's business ***.''

The underlying lawsuit, filed in Federal court, involved claims for racial discrimination brought by William Terry (Terry), Tom Banks (Banks) and Allan May (May), who alleged that on December 7, 1984, May, a club member, brought his guests Banks and Terry, who were black, into Arthur's Club. The gravamen of the complaint was that Banks and Terry were forced to leave Arthur's Club on the pretext that they were not members of the club, while at the same time other guests of May, who also were not members but who were white, were allowed to remain in the club.

The insured asked the insurer to undertake the defense of the underlying action, but the insurer refused, contending that it was not obligated to defend the insured in this instance. The insured disagreed, arguing that the underlying action arose from an allegedly "wrongful eviction," and thus the insured brought this declaratory action asking the court to construe the insurance policy provision regarding "wrongful eviction."

██ █ At the outset, it should be noted that the "construction of an insurance policy presents only a question of law." (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 121, 294 N.E.2d 7; see also *Coons v. Home Life Insurance Co.* (1938), 368 Ill. 231, 238, 13 N.E.2d 482; *John Bader Lumber Co. v. Employers Insurance* (1982), 110 Ill. App. 3d 247, 250, 441 N.E.2d 1306.) Therefore, interpreting an insurance contract provision "is an appropriate issue for determination by means of summary judgment." *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1063, 419 N.E.2d 601; see also *Donald B. MacNeal, Inc. v. Interstate Fire & Casualty Co.* (1985), 132 Ill. App. 3d 564, 477 N.E.2d 1322 (appellate court reversed and remanded the circuit court's summary judgment and directed that court to enter summary judgment for the appellant).

The insurer cites *Puritan Insurance Co. v. 1330 Nineteenth Street*

*Corp.* (D.D.C. March 19, 1984), 1984 CCH Insurance Fire & Casualty Cases 1149, Nos. 83—2228, 83—1754, in which the underlying lawsuit also was predicated on alleged racial discrimination by a restaurant. The policy required the insurer to defend the insured in a civil action arising from a variety of offenses, the third category of which included "wrongful entry or eviction, or other invasion of the right of private occupancy." The court held that the insurance policy used the phrase "wrongful eviction" in its legal sense as meaning to turn a tenant out of possession, and thus the insurer had no duty to defend the insured in the underlying action.

■ *Puritan* is distinguishable from the instant case for the reason that in *Puritan* "wrongful eviction" was included in a series of terms relating to invasions "of the right of private occupancy," while in the instant case the term was included in a group of torts which involve patrons. In such instances, words or phrases should be defined in the context of associated words or phrases in accordance with the maxim *noscitur a sociis*: "it is known from its associates." (*Black's Law Dictionary* 956 (5th ed. 1979).) The United States Supreme Court has roughly translated this Latin phrase as "a word is known by the company it keeps" (*Jarecki v. G.D. Searle & Co.* (1961), 367 U.S. 303, 307, 6 L. Ed. 2d 859, 862-63, 81 S. Ct. 1579, 1582), and Illinois also recognizes the doctrine (*People v. Parkins* (1979), 77 Ill. 2d 253, 257-58, 396 N.E.2d 22, *appeal dismissed* (1980), 446 U.S. 901, 64 L. Ed. 2d 254, 100 S. Ct. 1825; *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 475 N.E.2d 571; *People v. Goldman* (1972), 7 Ill. App. 3d 253, 255, 287 N.E.2d 177; see also 2A A. Sutherland, Statutory Construction sec. 4716 (4th ed. 1973)). Although *noscitur a sociis* is a rule of statutory construction, the principle of analyzing words in context is also utilized by our courts when interpreting insurance contracts. See *Hill v. Standard Mutual Casualty Co.* (7th Cir. 1940), 110 F.2d 1001, 1004; *Dodge v. Allstate Insurance Co.* (1967), 89 Ill. App. 2d 405, 407, 233 N.E.2d 100.

■ Accordingly, "wrongful eviction" includes making a patron leave a restaurant. Moreover, in response to a question propounded by the court in oral argument, the insurer conceded that the phrase "wrongful eviction" would include a situation in which the insured removed a rowdy patron from the premises. We cannot distinguish the scenario of the rowdy patron from one involving racial discrimination.

■ Finally, even assuming *arguendo* that the meaning of the phrase "wrongful eviction" in this insurance policy is ambiguous, the insured should be deemed covered. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044; *State Farm Fire &*

*Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 258, 430 N.E.2d 641; J. Murray, Contracts sec. 119 (2d rev. ed. 1974).) In *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 379, 400 N.E.2d 921, our supreme court held that "where language in an insurance policy is subject to different interpretations such ambiguity is to be construed in favor of the insured, and not the insurance company, which drafted the contract of insurance."

Accordingly, this court construes the phrase "wrongful eviction" in this particular insurance policy to include removing prospective clients from a business establishment on the basis of racial discrimination; therefore we affirm the circuit court.

Affirmed.

STAMOS and HARTMAN, JJ., concur.