Robin GARDNER, Plaintiff,

v.

Frank ROMANO and Hildegard Artmann, individually, and as Personal Representative of the Estate of Josef Artmann, decedent, Defendants,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Intervening Defendant.

Danielle HEDTCKE, Plaintiff,

v.

Frank ROMANO and Hildegard Artmann, individually, and as Personal Representative of the Estate of Josef Artmann, decedent, Defendants,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, Intervening Defendant.

Nos. 87–C–917, 87–C–964.

United States District Court, E.D. Wisconsin.

June 27, 1988.

Lawrence Shindell, Milwaukee, Wis., for plaintiffs.

Richard Schulz, Schulz, Schapekahm & Eiche, Milwaukee, Wis., for Romano.

J. Steven Tikalsky, Tikalsky, Raasch & Tikalsky, Waukesha, Wis., for Hildegard Artmann.

William J. Katt, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, Wis., for State Farm Fire and Cas. Ins. Co.

## DECISION AND ORDER

CURRAN, District Judge.

Plaintiffs Robin Gardner and Danielle Hedtcke commenced the above-captioned consolidated cases claiming that defendant

Frank Romano and defendant Hildegard Artmann, individually and as the personal representative of the estate of her deceased husband Josef Artmann, discriminated against them on the basis of race by refusing to rent apartments to them. The apartments were located in a multifamily complex at 5751 North 94th Street in the City of Milwaukee and had been advertised for rent in the daily newspaper. The complex was owned by the Artmanns and managed by Romano who served as the rental agent. They attribute Romano's refusal to rent to them to the fact that Gardner is black and that Hedtcke was planning to live with a black man. Consequently, they allege that they have been deprived of their civil rights under the Equal Protection Clause of the Fourteenth Amendment and section 101.22 of the Wisconsin Statutes. They have brought their actions pursuant to 42 U.S.C. §§ 1981, 1982 and 3601–31 seeking compensatory and punitive damages for injuries which include humiliation, embarrassment and mental anguish. The court has jurisdiction over their claims under 28 U.S.C. §§ 1331 and 1343.

## I. MOTION FOR DECLARATORY JUDGMENT

After a scheduling order had been issued in this case, State Farm and Casualty Insurance Company was allowed to intervene as a party defendant. State Farm had issued insurance Policy No. 99–06–6818–4 to Joseph [sic] and Hildegard Artmann. The policy which was in effect at the time in question had an effective date of May 31, 1986 and expired on May 31, 1987. The intervenor now asks the court to grant summary judgment in its favor declaring that it has no duty to defend nor to indemnify its insureds in this matter. See 28 U.S.C. § 2201. The movant maintains that it only has a duty to defend against injuries defined by the policy and that the unambiguous language of the policy rules out coverage for discriminating against rental applicants on the basis of race.

In response, defendants Artmann and Romano argue that the policy provides coverage for enumerated "personal injuries,"

and that the claims at issue in this case fall under the following definition:

> personal injury means injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business:
>
> . . . .
>
> c. wrongful entry or eviction, or other invasion of the right of private occupancy.

Notice of Motion and Motion for Declaratory Judgment at Exhibit A, p. 27.

In reply, State Farm asserts that this definition does not provide coverage because the plaintiffs are not alleging interference with a possessory right. The company argues that:

> It is not disputed that the plaintiffs in this case had a right to be considered for tenancy in the Artmann apartment building without regard to race. However, the question before the court is whether any alleged discrimination in the process of considering the plaintiffs for tenancy is covered by the policy of insurance. The right to be considered for tenancy does not equate with the right to occupy or possess an apartment in the building. The plaintiffs are correct in their assertion that an eviction based on improper racial grounds would be covered by the policy of insurance. That is clearly included in Part (c) of the definition of personal injury. There can be no question that a tenant in possession has objective property rights and the right to possess the apartment that he lives in. The plaintiffs in the case at bar are prospective tenants that have a right to be considered for tenancy. They claim that right was violated. However, the only damages that are covered by the State Farm policy of insurance are those that include a possessory interest. Therefore, although the plaintiffs may have a claim against defendants Romano and Artmann, the claim is not covered under the policy. Further, the construction of Part (c) of the definition of personal injury requires this result. The use of the phrase ". . . other invasion of the right of private occupancy" immediately after

wrongful entry or eviction contemplates that the prospective tenant have occupancy, or a possessory right in the apartment in question. Without that right of occupancy, a prospective tenant does not have those absolute rights to occupy the premises. For that reason, the two classes of property interests stand in clearly different light. The tenant in possession, can, and would, receive coverage for a wrongful eviction. This result is mandated by the clear wording of the policy provision.

Reply Brief of Intervening Defendant State Farm Fire and Casualty Insurance Company at 6–7.

## II. DECISION

### A. *Legal Standards*

State Farm's motion requires a judicial ruling on the meaning of the relevant policy provisions and, as such, is appropriate for summary resolution. *See Iowa National Mutual Insurance Company v. Liberty Mutual Insurance Company,* 43 Wis.2d 280, 168 N.W.2d 610 (1969). The company seeks a judgment declaring both that it has no duty to defend and that it has no duty to provide coverage; but, because the duty to defend encompasses a broader range of circumstances than the duty to indemnify where liability is present, the court will first consider the duty to defend. Wisconsin law applies to the insurance issues raised by State Farm, and, in Wisconsin, the supreme court has set forth the following standard governing the duty to defend:

> To determine whether an insurer is obligated to assume the defense of a third-party suit, it is necessary to determine whether the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy. Doubts about coverage must be resolved by the insurer in favor of the insured.

*Sola Basic Indemnity v. United States Fidelity and Guaranty Company,* 90 Wis. 2d 641, 646–47, 280 N.W.2d 211, 213–14 (1979) (citations omitted). The test of coverage is not what the insurer intended to cover, but what a reasonable person in the position of the insured would have understood to be covered. *See Ehlers v. Colonial Penn Insurance Company,* 81 Wis.2d 64, 259 N.W.2d 718 (1977).

As with most contracts, where an insurance policy's terms are clear and unambiguous, they must be so read. *See Lawver v. Boling,* 71 Wis.2d 408, 421–22, 238 N.W.2d 514, 521 (1976). The import of unambiguous provisions in an insurance policy is solely a question of law for the court. *See Kremers–Urban Company v. American Employers Insurance Company,* 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). The court is also entrusted with the construction of ambiguous provisions unless determination of the intent of the parties depends upon the credibility of extrinsic evidence, or on a choice among reasonable inferences to be drawn from extrinsic evidence. *See Welter v. Singer,* 126 Wis.2d 242, 248, 376 N.W.2d 84, 86 (Ct.App.1985). Words or phrases in a policy are ambiguous when they are fairly susceptible to more than one construction. Whether words or phrases in a policy are ambiguous is a question of law. Where ambiguous words or phrases do exist, the court's objective is to construe the policy so as to carry out the intention of the parties. *See Kremers–Urban,* 119 Wis.2d at 735–36, 351 N.W.2d at 163. The language of the policy is to be construed according to the common and ordinary meaning it would have in the mind of a lay person. *See Id.* "[T]he test is not what the insurer intended the words to mean but what a reasonable person in the position of the insured would have understood the words to mean." *Id.* Ambiguous words or phrases are construed strictly against the insurance company and in favor of coverage. *See Garriguenc v. Love,* 67 Wis.2d 130, 135, 226 N.W.2d 414, 417 (1975). Especially when an insurer seeks to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language. *See Meiser v. Aetna Casualty and Surety Company,* 8 Wis.2d 233, 98 N.W.2d 919 (1959).

The court must now apply these standards to the situation at hand.

## B. *The Contract*

The State Farm policy in question is titled an "Apartment Policy" and it provides for property insurance and for "comprehensive business liability" insurance. The "comprehensive" designation in the policy suggests that State Farm insured the Artmanns for a wide range of risks. Included in the "comprehensive business liability" section is a paragraph explaining the company's "Right and Duty to Defend," in these words:

> The Company shall have the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false, or fraudulent. The Company may make such investigations and settlements of any claim or suit as it deems expedient. The Company is not obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Notice of Motion and Motion for Declaratory Judgment at Exhibit A, p. 17. Given this general duty to defend, the court must now determine whether the claimants in these lawsuits are seeking "damages payable under this policy."

The policy contains no specific exclusion for race discrimination which does not result in physical injury or property damage. Neither is this type of occurrence specifically included in the coverage provisions. The insureds argue that coverage for "personal injury" is provided and that "personal injury" is defined in the policy to include "wrongful entry or eviction, or other invasion of the right of private occupancy." The insureds rely on the phrase "other invasion of the right of private occupancy" to provide coverage in this situation. As explained in Part I, above, State Farm maintains that this phrase does not apply because the plaintiffs had no possessory rights in the apartments at issue. They were merely seeking to lease the apartments.

Although the language in State Farm's "Apartment Policy" is widely used in the insurance industry, the parties agree that there have been no published opinions dealing with a similar policy provision in Wisconsin. The few courts in other jurisdictions which have faced the issue appear to be evenly divided and have issued their decisions without providing a detailed rationale. *See, e.g., Larson v. Continental Casualty Company*, 377 N.W.2d 148 (S.D. 1985) (ruling that "personal injury" does not include race discrimination); *Town of Goshen v. Grange Mutual Insurance Company*, 120 N.H. 915, 424 A.2d 822 (1980) (construing "invasion of the right of private occupancy" broadly).

The insureds insist that the phrase "other invasion of the right of private occupancy" plainly includes invasions of the right *to* occupy. State Farm, on the other hand, asserts that because the phrase is listed immediately after the phrases "wrongful entry" and "wrongful eviction" it must apply only to tenants who already have a possessory interest in the rental property. State Farm says that: "The policy language must be given its clear and plain meaning. The policy provision is meant to cover instances where a tenant in possession had property rights that are violated by a landlord or other employee of the insured." State Farm then suggests that: "Common examples of these violations include improper entry by landlords with pass keys, improper entries when the tenant is not notified in advance, in the absence of emergency, and other types of interference with the property rights held by the tenant." Reply Brief of Intervening Defendant State Farm Fire and Casualty Insurance Company at 7–8.

If State Farm's interpretation were to be accepted, the phrase "other invasion of the right of private occupancy" would add no meaning to the policy provision. The meanings suggested by State Farm are already included in the previous phrase, "wrongful entry." Yet, every phrase in a contract is presumed to have some meaning, so the court must reject State Farm's interpretation.

In the alternative, the insureds suggest that the "other invasion" phrase is ambiguous and should be construed against the company. The court, not to the contrary, believes that the phrase is not so much ambiguous as it is vague. The remainder of the policy provides no further indication of what the phrase is intended to mean. However, the court notes that, while other optional coverages are offered, there is no option available to cover claims of discrimination by potential tenants even though discrimination claims are far from uncommon occurrences in the business of apartment leasing. In addition, one of the listed business liability exclusions is:

> to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with knowledge or consent of any insured.

Notice of Motion and Motion for Declaratory Judgment at Exhibit A, p. 20, ¶ 16. While violations of civil statutes such as 42 U.S.C. §§ 1981 and 1982 could have also been excluded by such a provision, they are not.

Construing this vague policy language against the drafter, the court concludes that State Farm has not met its burden of showing that the claims at issue here are clearly beyond the policy coverage. Moreover, the court is persuaded that interpreting the "personal injury" definition to include claims for race discrimination by potential tenants comports with the reasonable expectations of the insureds, keeping in mind that the insureds are entitled to the benefit of the doubt on the duty to defend issue. *See Ehlers v. Colonial Penn Insurance Company*, 81 Wis.2d 64, 74–75, 259 N.W.2d 718, 723–24 (1977). Consequently, the court declares that State Farm has a duty to defend its insureds in this case.

Because the underlying litigation is still in the discovery stage, the court will not rule on whether State Farm has a duty to indemnify, but will decide this issue, if necessary, after the conclusion of this litigation. *See Tews Funeral Home, Inc. v. Ohio Casualty Insurance Company*, 832 F.2d 1037, 1–47 (7th Cir.1987).

## ORDER

For the reasons explained above, the court ORDERS that State Farm Fire and Casualty Insurance Company's Motion for Declaratory Judgment (filed May 31, 1988) IS DENIED.