Lestine MARTIN, Plaintiff,

v.

Jim BRUNZELLE, Defendant and
Third Party Plaintiff,

v.

STATE FARM FIRE & CASUALTY
COMPANY, Third Party Defendant.

No. 87 C 8533.

United States District Court,
N.D. Illinois, E.D.

Nov. 7, 1988.

Robert M. Winter, Chicago, Ill., for Jim
Brunzelle.

Stephen E. Sward, Rooks, Pitts and
Poust, Chicago, Ill., for State Farm Fire &
Cas. Co.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Lestine Martin ("Martin") has sued Jim
Brunzelle ("Brunzelle"), asserting Brun-
zelle's refusal to rent or show her an apart-
ment constituted racial discrimination in vi-
olation of 42 U.S.C. §§ 1982 and 3604.
Brunzelle in turn has sued State Farm Fire
and Casualty Company ("State Farm"),
seeking a declaratory judgment under 28
U.S.C. § 2201 that State Farm is obligated
to defend and indemnify him pursuant to
State Farm's insurance policy.

Both Brunzelle and State Farm have now
moved for summary judgment under Fed.
R.Civ.P. ("Rule") 56. For the reasons stat-
ed in this memorandum opinion and order,
Brunzelle's motion is denied and State
Farm's is granted.

### Contentions of the Parties [1]

Brunzelle was the owner or manager, or
both, of three apartment buildings located
at 11166, 11170 and 11174 South Columbus
Avenue in Worth, Illinois. Brunzelle was
insured under State Farm's Apartment Pol-
icy No. 93-87-4331-8 (the "Policy") on Au-
gust 5, 1987, the date Brunzelle allegedly
refused to show an apartment to Martin.

Policy Section II—Comprehensive Busi-
ness Liability provided this protection un-

---

**1.** Familiar Rule 56 principles impose on the
movant the burden of establishing the lack of a
genuine issue of material fact (*Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548,
2552-53, 91 L.Ed.2d 265 (1986)). For that pur-
pose this Court draws all "reasonable inferenc-
es, not every conceivable inference" in the light
most favorable to the nonmovant (*DeValk Lin-*

*coln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d
326, 329 (7th Cir.1987)). Where (as here) cross-
motions are involved, this Court must therefore
take a dual perspective—which might some-
times cause the denial of both motions. Fortu-
nately no facts are in dispute in this case and no
inference drawing is required, so any such risk
is eliminated.

der Coverage L—Business Liability:[2]

The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury, property damage** or **personal injury** caused by an **occurrence** to which this insurance applies.

In turn, Section II—Definitions specified:

[P]ersonal **injury** means injury which arises out of one or more of the following offenses committed in the conduct of the **named insured's** business:

a. false arrest, detention or imprisonment, or malicious prosecution;

b. the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **named insured;** or

c. wrongful entry or eviction, or other invasion of the right of private occupancy[.]

Brunzelle argues:

1. In subparagraph c, the phrase "other invasion of the right of private occupancy" includes a claim for racial discrimination in the refusal to rent property.

2. In the alternative, any ambiguity in the Policy's language must be resolved against State Farm to create the same result.

State Farm responds:

1. Allegations of such intentional racial discrimination do not constitute a violation of the "right of private occupancy."

2. Public policy prohibits coverage for acts of intentional racial discrimination.

### Applicable Standards

Because this Court is called on to construe the Policy, the current motions present only a question of law (*Z.R.L. Corp. v. Great Central Insurance Co.*, 156 Ill.App.3d 856, 858, 109 Ill.Dec. 481, 482, 510 N.E.2d 102, 103 (1st Dist.1987)). *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981) (citations omitted) teaches:

Generally speaking, if a provision of an insurance contract can reasonably be said to be ambiguous it will be construed in favor of the insured and against the insurer, who was the drafter of the instrument.... However, if the provisions of the insurance policy are clear and unambiguous there is no need for construction and the provisions will be applied as written.

### Duty To Defend

Because the duty to defend is both separate and distinct from, and broader than, the duty to indemnify (see, e.g., *Conway v. Country Casualty Insurance Co.*, 92 Ill.2d 388, 393, 65 Ill.Dec. 934, 936, 442 N.E.2d 245, 247 (1982) and numerous cases cited there), this opinion turns first to State Farm's duty to defend. *Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1183 (7th Cir.1980) (emphasis in original, and citations to all non-quoted authorities omitted) provides the framework for analysis:

It is well settled under the law of Illinois that

[this] duty to defend extends to cases where the complaint alleges several causes of action or *theories of recovery* against an insured, one of which is within the coverage of the policy while others [might] not be.

*Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 355 N.E.2d 24, 28 (1976) (emphasis supplied). An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage.... In making the comparison any

---

**2.** Each boldface term appears in the same typeface in the Policy, reflecting that the term is defined elsewhere in the Policy.

ambiguous or equivocal expressions in the policy will be strictly construed against the insurer.

That reference to "potential for coverage" accurately reflects Illinois law—as *Conway,* 92 Ill.2d at 393, 65 Ill.Dec. at 936, 442 N.E. at 247 (emphasis added) states succinctly:

> An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, *or potentially within,* the policy's coverage.

This is not the first time the precise substantive issue posed by this action has been addressed in the reported cases. *Larson v. Continental Casualty Co.,* 377 N.W.2d 148 (S.D.1985) dealt with racial discrimination claims, much the same as those here, in the context of the identical contract language. There the court (*id.* at 150) ruled the policy language was unambiguous and did not extend to race discrimination claims. Hence the plaintiff's allegations did "not fall within the language of the policy, when the clause is given its plain and ordinary meaning" (*id.*). Policy coverage was therefore rejected.[3]

On the other side of the coin, *Gardner v. Romano,* 688 F.Supp. 489 (E.D.Wis.1988) also involved a fact pattern identical to that here and held the phrase "other invasion of the right of private occupancy" was vague and consequently must be construed against the drafter.[4] District Judge Curran was persuaded that coverage for racial discrimination "comports with the reasonable expectations of the insureds, keeping in mind that the insureds are entitled to the benefit of the doubt on the duty to defend issue" (*id.* at 493 (citation omitted)).

*Town of Goshen v. Grange Mutual Insurance Co.,* 120 N.H. 915, 424 A.2d 822 (1980) has dealt with the identical policy phrase in a different context. It held 42 U.S.C. § 1983 claims, alleging that a planning board created economic hardships that destroyed the viability of the property owner's project, fell within the "other invasion" language.

State Farm urges this Court to reach the same conclusion as *Larson,* in preference to the analysis in *Gardner.* Its Mem. 3 urges the "other invasion" phrase provides coverage only if there exists a landlord-tenant relationship or if a plaintiff has a "vested property right which was wrongfully invaded." State Farm says examples of such covered conduct include violations of the right to use and develop property (as in *Town of Goshen*) and private nuisance claims (R. Mem. 3).[5]

If State Farm is right—if the Policy language is "clear and unambiguous" and does not extend to the current claim—the *Solo Cup–Conway* standard (requiring no defense by the insurer where "there is no potential for coverage") is met. And because no reported Illinois case has dealt either with the issue here or with any close-

---

3. [Footnote by this Court] State Farm R. Mem. 4 also cites the unpublished opinion in *State Farm Fire and Casualty v. Plutsky,* 848 F.2d 199 (9th Cir.1988) [full text available in WESTLAW] as having reached the same conclusion. State Farm's citation clearly infringes upon the spirit (though not the letter) of the Court of Appeals' order printed on the first page of the case (see 1988 U.S.App. LEXIS 7019):

> THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION AND MAY NOT BE CITED TO OR BY THE COURTS OF THIS CIRCUIT EXCEPT AS PROVIDED BY 9TH CIR.R. 36–3.

That restriction parallels our own Court of Appeals' Circuit Rule 53(b)(2)(iv). Although in literal terms it does not prohibit citation to *this* Court (because it is not a court in the Ninth Circuit), (1) the unpublished opinion has not been furnished to this Court by State Farm and (2) even if it had, this Court would be wholly disinclined to treat it as citeable authority under the circumstances.

4. State Farm was also involved in *Gardner* (as it was in *Plutsky,* see n. 3) and advanced many of the same arguments it now presents to this Court.

5. State Farm's current explanation of the phrase appears somewhat different from the losing position it advanced in *Gardner* (as n. 3 indicates, this Court has no way of knowing whether the now-suggested reading was also the one found persuasive by the Court of Appeals in *Plutsky*). What controls, however, is the meaning of the language—not necessarily what lawyers tender by way of advocacy.

ly analogous one, this Court is free to decide the better rule (as the one the Illinois Supreme Court would likely adopt if confronted with the question).

State Farm is indeed correct. "Other invasion of the right of private occupancy" is simply *part* of a more complete definition of "personal injury," following directly on the heels of "wrongful entry or eviction." Ejusdem generis principles draw on the sensible notion that words such as "or other invasion of the right of private occupancy" are intended to encompass actions of the same general type as, though not specifically embraced within, "wrongful entry or eviction." [6] Those two terms have commonly understood meanings.[7] Absent a catch-all phrase such as "or other invasion of the right of private occupancy," an insurer could resist coverage for actions that did not fit within those precise meanings, yet would clearly seem within the same class of conduct intended to be insured against. Then a court confronted with such resistance would be forced to choose between denying coverage or bending the "wrongful entry or eviction" language out of shape to provide the insured with coverage.

For example, a landlord armed with a key to a tenant's apartment for security or maintenance purposes does not commit "wrongful entry" by gaining access to the apartment through use of that key. But once there, the landlord may very well engage in conduct in derogation of the tenant's property rights—thus creating some "other invasion of the right of private occupancy." Likewise, a landlord could take actions that fail to satisfy the elements of an actual or constructive eviction (see, e.g., 24 I.L.P. *Landlord and Tenant* § 341, at 394–95 (1980) for a general analysis of "eviction") yet do violate a tenant's "right of private occupancy."

Where Brunzelle (and for that matter *Gardner*) err in urging the ambiguity of the Policy provision is in failing to give full and normal content to the word "right." In normal English (or at least normal legal English, which may be but is not necessarily the same), a "right" is a legally enforceable claim of one person against another (see generally *Restatement (Second) of Property* § 1.2 (1977)). Unquestionably Martin had no "right" of "private occupancy"—no "right" to occupy the apartment she applied for. Though she was entitled not to be discriminated against in her application, that is not at all the same as a "right" to occupy: an enforceable claim to occupancy (to the exclusion of Brunzelle or anyone else).

Thus State Farm is correct in contending (Mem. 3) that the phrase "other invasion of the right of private occupancy" provides coverage only if there exists a landlord-tenant relationship or if the plaintiff has a "vested property right." And because Martin had no such "right," Brunzelle could not have committed an "invasion of the right of private occupancy."

As another line of attack, Brunzelle Mem. 6 contends discrimination claims are not uncommon in the apartment leasing business (see *Gardner*, 688 F.Supp. at 493), so State Farm had the duty to exclude that risk by specific Policy language. To that end Brunzelle invokes *Bremen State Bank v. Hartford Accident and Indemnity Co.*, 427 F.2d 425, 427 (7th Cir.1970):

> It is well settled under the law of Illinois, as well as most other jurisdictions, that if an insurer does not intend to insure against a risk which is likely to be inherent in the business of the insured, it should specifically exclude such risk from the coverage of the policy.

That would be a persuasive argument if the Policy were written to provide general coverage, excluding only specified risks.

---

6. Where the converse situation is presented— where the court is called upon to construe a more specific term (such as "wrongful eviction") in the context of an associated term of greater generality (such as "other invasion of the right of private occupancy")—the same sensible approach takes the label *noscitur a sociis*

(see *Z.R.L.*, 156 Ill.App.3d at 858, 109 Ill.Dec. at 482, 510 N.E.2d at 103).

7. See, e.g., *Black's Law Dictionary* at 1190 (5th ed. 1979) for a definition of "right of entry" and *id.* at 498 for definitions of "eviction."

But here the Policy builds from the ground up: It affords coverage only for defined risks. Among those covered risks, "personal injury" is in turn specifically defined to include only three types of conduct (categories "a," "b" and "c" in the Policy).

There is no call for State Farm to list exclusions from a category of coverage that would not embrace the excluded item in the first place. What is plainly not *included* within the coverage is by definition *excluded.* Racial discrimination in refusing to lease an apartment is not "wrongful entry," it is not "eviction," and it is not any "other invasion of the right of private occupancy."

It would distort sound principles of contract law to require State Farm to catalogue such claims of discrimination (or any other acts not within the normal meaning of Policy-covered conduct) as specifically excluded from coverage. Brunzelle paid a premium only for specified categories of coverage. He cannot now seek, under *Bremen State Bank* or otherwise, to expand the Policy to include unspecified liabilities.

In sum, the Policy language is clear and unambiguous: It does not provide coverage for racial discrimination. Hence Martin's Complaint creates no potential for coverage. State Farm has no duty to defend.

Implicit in the preceding discussion is a decision that State Farm has no duty to indemnify against the claimed liability either.[8] Finally, with Brunzelle having lost down the line on the merits, he is not entitled to attorney's fees incurred in prosecuting this declaratory judgment action in any event.[9]

### Conclusion

There is no genuine issue of material fact requiring trial as to State Farm. It is entitled to a judgment as a matter of law declaring that it has no duty either to defend or to indemnify Brunzelle on Martin's claim of racial discrimination. Brunzelle's

third-party claim is therefore dismissed with prejudice.

Because Brunzelle's claim has been State Farm's only connection to this action, it is entitled to the certainty and finality of a Rule 54(b) determination. This Court expressly determines there is no just reason for delay and expressly directs the entry of final judgment declaring State Farm has no duty either to defend or to indemnify Brunzelle (see *National Metalcrafters v. McNeil,* 784 F.2d 817, 821 (7th Cir.1986)).

---

**8.** This Court therefore need not address State Farm's alternate public policy argument.

**9.** That obviates any need to deal with an issue on which the Illinois Appellate Courts have split

—the recoverability of such fees where the insured wins on the merits (see the discussion in *Green v. J.C. Penney Auto Ins. Co.,* 806 F.2d 759, 765 (7th Cir.1986)).