**BOSTON HOUSING AUTHORITY,**
**Plaintiff,**

v.

**ATLANTA INTERNATIONAL INSURANCE COMPANY, National Casualty Company and Covenant Mutual Insurance Company, Defendants.**

**Civ. A. No. 91–10918–H.**

United States District Court,
D. Massachusetts.

Jan. 6, 1992.

Rodney J. Solomon, Susan P. Ferrara, Boston Housing Authority, Boston, Mass., for Boston Housing Authority.

Thomas Edward Peisch, Robert R. Pierce, Conn, Kavanaugh, Rosenthal & Peisch, Boston, Mass., for Atlanta Intern. Ins. Co.

Michael Dickinson Lurie and Steven P. Perlmutter, Harrison & McGuire, P.C., Boston, Mass., for Nat. Cas. Co.

John P. Graceffa and Mary J. McNamara, Gallagher & Gallagher, P.C., Boston, Mass., for Covenant Mut. Ins. Co.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

The Plaintiff, Boston Housing Authority ("BHA"), brought this action against the Defendants, Atlanta International Insurance Company ("Atlanta"), National Casualty Company ("National") and Covenant Mutual Insurance Company ("Covenant"), alleging breach of contract (Count I) and violations of Mass.Gen.L. ch. 176D, Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance (Count II), and Mass. Gen.L. ch. 93A, Regulation of Business Practices for Consumers Protection (Count III). The action was originally filed in state court on February 20, 1991 but was subsequently removed to federal court on the basis of diversity of citizenship on March 27, 1991. The plaintiff moves for partial summary judgment with respect to the contract claim, and the defendants move for summary judgment with respect to all three claims.

The plaintiff alleges that the defendants breached their respective contracts of insurance by refusing to defend the plaintiff in another action.[1] The underlying suit was filed by the National Association for the Advancement of Colored People and two individuals (collectively "NAACP") against the BHA on June 14, 1988 in Federal District Court. The NAACP Complaint alleged that the BHA engaged in racially discriminatory practices in housing in violation of 42 U.S.C. § 1981 (Count I), 42 U.S.C. § 1982 (Count II), 42 U.S.C. § 1983 (Count III), 42 U.S.C. § 2000d (Title VI) (Counts IV and VII), 42 U.S.C. § 3604 (Title VIII) (Count V), 42 U.S.C. § 3608 (Title VIII) (Count VI), Mass.Gen.L. ch. 151B, § 4 (Count VIII), Mass.Gen.L. ch. 121B, § 32 (Counts IX and X), Mass.Gen.L. ch. 12, § 11H and 11I (Count XI), and 5 U.S.C. § 701, *et seq.* (Count XII).

The NAACP Complaint described the BHA's allegedly racially discriminatory practices from 1962 until the date of suit and recounted the results of earlier suits and investigations into such discriminatory practices. In 1962, the NAACP filed a Complaint against the BHA with the Massachusetts Commission Against Discrimination ("MCAD"). Following the filing of the Complaint with the MCAD, the BHA entered into a settlement agreement with the NAACP which required the BHA to adopt non-discriminatory policies. Allegedly, the BHA failed to comply with the settlement agreement. In 1975, the BHA was sued in the Housing Court in Boston. As a result of this suit, the Housing Court issued a series of orders to the BHA to rectify segregation in its public housing. In 1977, the Housing Court approved a Consent Decree which incorporated a new Tenant Selection and Assignment Policy ("TSAP") which was designed to achieve racial integration at the public housing projects administered by the BHA. In Paragraph 28 of its Complaint, the NAACP alleged that "the BHA has not abided by the TSAP and

---

**1.** The BHA does not, at this time, seek judgment with respect to the defendants' duty to indemni- fy the BHA. The defendants deny any duty to defend or to indemnify the BHA.

has made little or no progress in ceasing to discriminate against blacks...."

The NAACP Complaint further recounted the 1976 findings of a HUD investigation into the BHA's practices which concluded that "the BHA maintained segregated housing and that minorities waited longer for, and received inferior housing than non-minorities." NAACP Complaint, Paragraph 29. In April, 1977 the MCAD released the results of its own investigation and concluded that "federal monies have been used to the detriment of HUD civil rights objectives and have served to maintain and exacerbate patterns of racial segregation [in BHA housing]...." NAACP Complaint, Paragraph 30. In November, 1977, the BHA and HUD entered into a compliance agreement to rectify the BHA's segregation practices. Again in 1987, according to the NAACP Complaint, HUD released findings of another investigation, finding discrimination in housing and noncompliance with Title VI of the Civil Rights Act of 1964. According to the NAACP Complaint, the BHA ultimately acknowledged that its policies and practices had denied housing opportunities to blacks. The NAACP Complaint alleged that the BHA continued to discriminate even after the release of the 1987 HUD findings.

After receiving the NAACP Complaint, the BHA gave notice of the claim to the Defendants Atlanta, National and Covenant. Atlanta provided comprehensive general liability insurance, including personal injury liability coverage and excess liability coverage to the BHA from June 1, 1976 until June 1, 1983. The personal injury schedule of the policy required Atlanta to provide coverage to the insured for any personal injuries arising out of certain offenses committed in the conduct of the insured's business. "Personal injury" includes, among other offenses, "wrongful entry or eviction, or other invasion of the right of private occupancy."

Covenant's policy also provided comprehensive general liability insurance, including personal injury liability coverage to the BHA. The contracts of insurance covered the period of June 1, 1983 to June 1, 1985.

The Covenant policy provided personal injury coverage which was similar to the Atlanta policy. The Covenant policy likewise defined "personal injury," in part, as a "wrongful entry or eviction or other invasion of the right of private occupancy."

National's policy provided comprehensive general liability insurance, including personal injury liability coverage, to the BHA from June 1, 1985 to June 1, 1990. The policy provided coverage similar to the policies of Atlanta and Covenant and its definition of "personal injury" included "wrongful entry or eviction or other invasion of the right of private occupancy."

The defendants refused to defend the BHA against the NAACP and the BHA provided its own defense in that suit. The BHA settled the case and is now obligated to pay damages to the NAACP. The defendants now refuse to reimburse the BHA for its attorney's fees or to indemnify the BHA for the damages which it owes the NAACP as a result of the settlement.

The BHA contends that the defendants' policies provided coverage for racial discrimination claims. More specifically, the BHA asserts that the racial discrimination claims are covered by the personal injury provision which includes "wrongful entry or eviction or other invasion of the right of private occupancy." The BHA argues, in brief, that racial discrimination is an "invasion of the right of private occupancy."

■ The defendants contend, however, that Mass.Gen.L. ch. 175, § 47, cl. 6(b), the doctrine of "known loss" and the policy language itself dictate that the defendants had no duty to either indemnify or defend the BHA in its suit with the NAACP.

"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass.App.Ct. 316, 318, 458 N.E.2d 338 (1983). The defendants as-

sert that they did not provide coverage to the BHA because the facts of the NAACP law suit, as set out in the NAACP Complaint, indicated that they were precluded from doing so by Mass.Gen.L. ch. 175, § 47, cl. 6(b), the doctrine of "known loss" and by the policy language itself.

Massachusetts General Laws ch. 175, § 47, cl. 6(b) "precludes an insurance company from insuring 'any person against legal liability for causing injury, other than bodily injury, by his deliberate or intentional crime or wrongdoing.'" *Andover Newton Theological School, Inc. v. Continental Casualty Co.*, 409 Mass., 350, 566 N.E.2d 1117 (1991). Coverage is barred "only if an intentionally committed wrongful act was also done deliberately or intentionally, in the sense that the actor knew that the act was wrongful." *Id.* at 352, 566 N.E.2d 1117. "Indifferent or reckless wrongdoing is not deliberate or intentional wrongdoing." *Id.* Thus, the public policy statute at issue here requires the Court to determine whether the BHA deliberately or intentionally committed a wrongful act in the sense that the BHA knew that its conduct was wrongful.

The Court is mindful that "great circumspection" is required when granting summary judgment in cases involving state of mind. *Maiorana v. MacDonald*, 596 F.2d 1072, 1077 (1st Cir.1972). In such cases "a trial is appropriate as long as the party opposing summary judgment has given 'some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim.'" *Id.*, quoting *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975).

In the instant case the NAACP Complaint asserted that the BHA violated numerous court orders and compliance agreements. The NAACP Complaint also referred to the findings of several investigations which described the BHA's failure to comply with standards for desegregation in housing. The BHA has not refuted the allegations presented in the NAACP Complaint. The BHA's repeated violations of governmental orders amount to a pattern of wrongdoing which exceeds mere reckless conduct and establishes that the BHA acted deliberately and intentionally. The BHA has not presented any evidence which would suggest that the BHA's conduct was less than deliberate. Thus, it has failed to "produce the requisite quantum of evidence to enable [it] to reach the jury with [its] claim." *See Maiorana, supra.* Accordingly, the Court concludes as a matter of law that the BHA acted intentionally in committing racial discrimination in housing and that, therefore, Mass.Gen.L. ch. 175, § 47, cl. 6(b) bars insurance coverage in these circumstances. Thus, the defendants are not liable to indemnify the BHA for any damages arising from its suit with the NAACP.

■ The question remains whether the defendants are liable for any costs associated with the BHA's defense of the suit brought by the NAACP. "[W]hile public policy proscribes insuring against legal liability for intentional wrongdoing, the language of the public policy prohibition expresses no intent with respect to insurance coverage for the costs of defending against such liability. Although an argument can be made that a public policy is to some extent subverted by insurance against defense costs, the basic fact is that this is not insurance against liability." *Andover Newton Theological School v. Continental Cas.*, 930 F.2d 89, 95 (1st Cir.1991).

The Court, in its judgment, rules that the Massachusetts Supreme Judicial Court and the First Circuit would rule under the circumstances of the instant case that public policy is "subverted" by insurance against defense costs. Racial discrimination is an inherent evil. It is violative of the Fourteenth Amendment to the U.S. Constitution. It is also directly contrary to a principle of conduct even older than the Constitution, one rooted in human nature, cognizable by human reason, and succinctly expressed in the Declaration of Independence that "all men are created equal." It is the fundamental principle upon which our government was established.[2] Here, the

2. "We hold these truths to be self evident, that all men are created equal.... That to secure

insured engaged in a pattern of racial discrimination in housing, in violation of court orders, over the long course of many years. Such a flagrant and intentional interference with the civil rights of racial minorities contrasts sharply with the isolated instance of age discrimination at issue in *Andover Newton Theological School v. Continental Cas.*, 930 F.2d 89. Given the blatant violation of public policy which is involved in the instant case, the Court rules that Mass.Gen.L. ch. 175, § 47, cl. 6(b) bars insurance coverage for the defense of the BHA's conduct. The defendants are, therefore, entitled to judgment as a matter of law.

■ Since the Court has determined that Mass.Gen.L. ch. 175, § 47, cl. 6(b) prohibits both the defense and indemnification of the BHA in its suit with the NAACP, the Court need not interpret the pertinent provisions of the insurance policies in question. Nonetheless, the Court further holds that the language of the insurance policies at issue does not provide for coverage for the conduct of the BHA as alleged in the NAACP Complaint. The Court concludes that racial discrimination in rental housing and in rental services does not constitute an "other invasion of the right of private occupancy."

The Court employs the principles of "ejusdem generis" in determining that the phrase "other invasion of the right of private occupancy" is "intended to encompass actions of the same general type as, though not specifically embraced within, 'wrongful entry or eviction.'" *Martin v. Brunzelle*, 699 F.Supp. 167, 170 (N.D.Ill.1988). Furthermore, the word "invasion" suggests an act of a trespatory nature. *See* Webster's Ninth New Collegiate Dictionary 636 (1984). Racial discrimination does not con-

stitute an act of trespass and cannot be considered an "invasion of the right of private occupancy."

The BHA has suggested that the NAACP Complaint asserted claims of constructive eviction through the BHA's breach of warranty of habitability. The BHA argues that such allegations would constitute an "invasion of the right of private occupancy" and cites *Beltway Management Co. v. Lexington–Landmark, Inc.*, 746 F.Supp. 1145 (D.D.C.1990), in support of its argument. While the NAACP Complaint did assert that the BHA provided disparate rental services to the NAACP plaintiffs, the Complaint did not assert facts which alleged a breach of the warranty of habitability so as to constitute constructive eviction. The gravamen of the Complaint involved the BHA's discriminatory racial practices rather than the breach of its duty to provide habitable living quarters. In short, the NAACP Complaint asserted claims of racial discrimination in housing and the BHA's insurance policies did not provide insurance coverage for such intentional wrongful conduct. Thus, according to the terms of the policies at issue, the defendant insurers are not liable to defend or to indemnify the BHA in its suit with the NAACP.[3]

SO ORDERED.

these rights governments are instituted." The Unanimous Declaration of the Thirteen United States of America. Four years after the Declaration, Massachusetts, in Article I of its new Constitution, declared that "All men are born free and equal."

**3.** Due to the Court's ruling with respect to the plaintiff's violation of public policy and due to the Court's interpretation of the insurance policies at issue, the Court need not address the issue of "known loss" raised by the defendants.

The Court notes, however, that it appears clear from the record that the BHA knew that its employees were engaging in discriminatory practices which ultimately led to the NAACP suit, and, therefore, the BHA was aware of the "loss" which it later claimed. *See Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir. 1981). Accordingly, under the principle of "known loss," the insurers had no duty to defend or indemnify the BHA.