Howard **BERNSTEIN**, Maxine Bernstein, Alan Bernstein, Appellees,

v.

**NORTH EAST INSURANCE COMPANY, Appellant.**

No. 92–7150.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 23, 1994.

Decided April 5, 1994.

Andrew M. Fallek, Brooklyn, NY, argued the cause and filed the briefs, for appellant. Alan L. Fishbein, Ellicott City, MD, entered an appearance.

Gary D. Wright, Washington, DC, argued the cause and filed the brief, for appellee.

Before: MIKVA, Chief Judge, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

The defendant insurance company issued a policy to plaintiffs, Howard, Maxine and Alan Bernstein, with respect to an apartment house they owned in Northwest Washington, insuring them against liability for, among other things, "wrongful entry or eviction, or other invasion of the right of private occupancy". The Bernsteins were sued by Barbara Willis, an African–American who according to her allegations sought to rent an apartment in the Bernsteins' building and was denied even an opportunity to look at an available apartment, entirely on account of her race, in violation of the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.,* and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82. The Bernsteins asked the insurer to defend them, but it denied coverage. After settling the Willis suit for $325,000, they sued

the insurer under the diversity jurisdiction for breach of the insurer's duty to defend against covered claims. On cross motions for summary judgment, the district court ruled in the Bernsteins' favor, finding the policy language ambiguous and construing it against the insurance company as drafter. The parties stipulated to damages of $482,-654.66 (the Willis settlement plus costs including attorneys' fees), and the district court entered a final judgment for that amount. The sole issue on appeal is whether the quoted policy language encompasses liability for discrimination in refusing even to allow a would-be tenant to see an apartment or otherwise consider her interest in leasing. Finding that it does not, we reverse.

■ If a complaint states a cause of action that falls within a provision of an insurance policy, the insurance company must defend the insured pursuant to that policy. See *Continental Casualty Co. v. Cole,* 809 F.2d 891, 895 (D.C.Cir.1987); Bernstein Policy, ¶ I. Here, the complaint alleged that the Bernsteins' agent had for unlawful discriminatory reasons "refused to negotiate for the rental of and otherwise made unavailable and denied to plaintiff" one of their apartments. Willis Complaint, ¶ 13.

The insurance policy did not provide comprehensive coverage, but only liability for specified risks: "Owners', Landlords' and Tenants' Liability Insurance" and "Personal Injury Liability Insurance". The clause under which the Bernsteins sought coverage reads:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called "personal injury") sustained by any person ... and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

. . . . .

Group C—wrongful entry or eviction, or other invasion of the right of private occupancy....

The dispute centers around the meaning of "other invasion of the right of private occu-

pancy" and whether it can fairly be read to encompass a discriminatory refusal to consider a person for future tenancy.

If the policy language is ambiguous, we construe the contract to favor the insured. *Continental Casualty Co.,* 809 F.2d at 895; *Meade v. Prudential Ins. Co. of America,* 477 A.2d 726, 728 (D.C.1984). But, like several other courts, we find the policy language unambiguous in its limitation to actions that interfere with an existing "right of private occupancy". See *Martin v. Brunzelle,* 699 F.Supp. 167, 170 (N.D.Ill.1988); *Larson v. Continental Casualty Co.,* 377 N.W.2d 148, 150 (S.D.1985); *Boston Housing Authority v. Atlanta International Insurance Co.,* 781 F.Supp. 80, 84 (D.Mass.1992) (dictum). But see *Gardner v. Romano,* 688 F.Supp. 489, 492 (E.D.Wis.1988).

Willis never asserted that she had acquired a "right of private occupancy" or that the Bernsteins had interfered with such a right; the alleged wrong interfered with her right to be non-discriminatorily considered for a possible future right of private occupancy. Moreover, the "other invasion" language follows a reference to "wrongful entry or eviction", both of which presuppose the tenant's acquisition of a legal possessory interest in the landlord's property. Cf. *Pipefitters Welfare Educ. Fund v. Westchester Fire Insurance Co.,* 976 F.2d 1037, 1040 (7th Cir.1992) (noting that both actual and constructive eviction refer to actions taken by landlords to deprive tenants "of their right to occupy or enjoy leased premises"). The principle that a general term means something of the same sort as more specific ones with which it is used (*ejusdem generis* ) suggests that a possessory interest (possession or a right to possession) should also be a predicate for "other invasion of the right of private occupancy". One who merely seeks to view an apartment, with an eye to possible tenancy, has no such interest. See *Martin v. Brunzelle,* 699 F.Supp. at 170; see also *Boston Housing Authority v. Atlanta International Insurance Co.,* 781 F.Supp. at 84 (applying *ejusdem generis* and noting that the term "invasion" itself suggests trespassory behavior). Even on the supposition that Willis's *relief* might have encompassed some

specific entitlement to an apartment in the Bernsteins' building, compare *Cabrera v. Fischler,* 814 F.Supp. 269, 274, 282 (E.D.N.Y. 1993) (refusing to require defendants to offer "plaintiffs ... available apartments that meet their needs" on the ground that such relief was "much too severe and extreme"), with *Newbern v. Lake Lorelei, Inc.,* 308 F.Supp. 407, 418 (S.D.Ohio 1968) (enjoining defendants from sale of specific lot to anyone other than plaintiffs where latter had submitted offer fully complying with all of developer's stated criteria), that relief would only have *created* a possessory interest; the wrong she alleged did not impinge upon an existing one.

The district court accepted the Bernsteins' reading of the "other invasion" language largely on the ground that unless it embraced claims such as Willis's it would serve no purpose at all. See also *Gardner,* 688 F.Supp. at 492. In fact, however, insurers have been held liable under the phrase for several types of claims that are similar to but not encompassed by "wrongful entry or eviction", including (in the tenant context) breach of the warranty of habitability. See *Beltway Management Co. v. Lexington–Landmark Insurance Co.,* 746 F.Supp. 1145, 1153 (D.D.C.1990); see also *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265, 273 (1st Cir.1990) (finding coverage of liability for infliction of nuisance on another landowner). North East suggests a number of other possibilities, such as imposition of improper restrictions on the number of visitors a tenant may have or on hours of ingress and egress, which might well fall outside a court's view of breach of an implied warranty of habitability. And the court in *Martin v. Brunzelle* offered the example of a landlord who properly enters the tenant's domain but *then* engages in "conduct in derogation of the tenant's property rights". 699 F.Supp. at 170. Coverage of these invasions of the qualitative aspects of established possessory interests seems a natural role for the disputed phrase. The Willis claim is well outside them.

Because the language of the contract does not encompass the Willis claim, we need not reach appellants' argument that insurance

against liability for intentional racial discrimination is void as against public policy. Accordingly, the judgment of the district court is

*Reversed.*