**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,**

**v.**

**IMAGE CONTROL PROPERTY MANAGEMENT, INC., Jean Wojcik, Paul Ores, Kirk Ores, Warren Ores, Louise Ores, and Anna Niemer, Defendants.**

No. 95 C 3902.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 21, 1996.

Michael John Duffy, Kelly Anne Croll, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Commercial Union Insurance Company.

Marshall Norman Dickler, James Alan Slowikowski, Sandra T. Kahn, Howard Mark Zavell, Marshall N. Dickler, Ltd., Arlington Heights, IL, for Image Control Property Management, Inc., Jean M. Wojcik.

Brenda Sue Shavers, John Marshall Fair Housing Legal Clinic, Chicago, IL, for Paul Ores.

Brenda Sue Shavers, Mark A. Chapman, John Marshall Fair Housing Legal Clinic, Chicago, IL, for Kirk Ores, Warren Ores, Louise Ores, Anna Niemer.

## *MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Commercial Union Insurance Company brings this diversity action for a judgment declaring that it owes no duty to defend Defendants Image Control Property Management and Jean Wojcik [1] against a housing discrimination suit filed in federal court. Commercial Union has also named the plaintiffs in the underlying discrimination suit as defendants in this declaratory judgment action: Paul Ores, Kirk Ores, Warren Ores, Louise Ores, and Anna Niemer. Commercial Union moves for summary judgment, and Image Control and Wojcik have filed a cross-motion for summary judgment. For the reasons discussed below, we grant Commercial Union's motion and deny Image Control's cross-motion.

### I. Background

According to the complaint in the underlying discrimination suit, in January 1994 brothers Paul and Kirk Ores contracted to purchase a condominium unit in the Willow West Condominiums of Willowbrook, Illinois. Pl.'s 12(M), Ex. A, Second Amended Compl. (*"Ores* Compl."). Paul and Kirk, who are mentally disabled, had secured financing aid from the Illinois Department of Mental Health. However, in March 1994—before the purchase could be completed—members of the Willow West Condominium Association made discriminatory inquiries into Paul and Kirk's attempted purchase, and made discriminatory statements to Paul and Kirk, their parents Warren and Louise, and Anna Niemer, the real estate agent acting for the unit's seller. *Ores* Compl. ¶¶ 14–17. In order to discourage the purchase, these members requested to observe and interview Paul and Kirk with all condominium members present. *Id.* ¶ 19. In addition, members of

---

1. For convenience's sake, on occasion we will collectively refer to Image Control and Wojcik as Image Control.

Willow West devised and promulgated discriminatory rules and procedures regarding approval of the sale to Paul and Kirk. *Id.* ¶ 18. Finally, Wojcik, who worked for Image Control, "adopted and took steps to advance" Willow West's discriminatory rulemaking, and "undertook to disguise discriminatory statements, treatment and acts." *Id.* ¶ 20. The alleged discrimination prevented Paul and Kirk from closing on the purchase. *Id.* ¶ 21.

On January 23, 1995, the Oreses and Niemer filed a second amended complaint against Willow West, individual residents of Willow West, Image Control, and Wojcik, alleging violations of the Fair Housing Act of 1968, 42 U.S.C. §§ 3604(c), (f), 3617. Commercial Union, a Massachusetts corporation, had issued a commercial general liability insurance policy to Image Control effective for one year starting December 14, 1993. Pursuant to the policy, Image Control demanded coverage for itself and Wojcik. However, Commercial Union rejected coverage, filed this declaratory judgment action, and now moves for summary judgment. Commercial Union argues that the allegations in the *Ores* complaint do not fall within the policy's coverage; Image Control cross-moves for summary judgment, contending that the allegations fall within the policy's coverage. We address their arguments in turn.

## II. Standard for Reviewing Motion for Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). Once the moving party has

done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion [2]

In determining whether an insurer owes its insured a duty to defend against particular suits, "the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991) (emphasis in original). In order for the insurer to justifiably refuse to defend the insured, it must be "*clear* from the face of the underlying complaints that the allegations fail to state facts" bringing the case within or potentially within coverage, *id.* (emphasis in original), or if the insurer relies on an exclusionary provision, it must be "clear and free from doubt that the policy's exclusion prevents coverage," *Travelers Ins. Cos. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir. 1992); *Bituminous Cas. Corp. v. Fulkerson,* 212 Ill.App.3d 556, 156 Ill.Dec. 669, 675, 571 N.E.2d 256, 262 (1991). In addition, we must liberally construe the underlying complaints and the insurance policy in favor of the insured. *Wilkin Insulation Co.,* 161 Ill.Dec. at 284, 578 N.E.2d at 930. Finally, "if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." *Id.*

### A. "Occurrence"

First, Image Control contends that the allegations in the *Ores* complaint fall within

---

2. Because the parties do not dispute that Illinois law applies in this diversity action, and we discern no reason for applying another state's law, we apply Illinois law. *See Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218–19 n. 6 (7th Cir.1995).

the insurance policy's coverage for "bodily injury and property damage liability." Pl.'s 12(M), Ex. B, Policy § I(A). Commercial Union points out, however, that the policy provides for such coverage only if the " 'bodily injury' or 'property damage' is caused by an *'occurrence.'*" *Id.* § I(A)(1)(b)(1) (emphasis added). Assuming for the moment that the *Ores* complaint alleges "bodily injury" or "property damage," Commercial Union argues that the alleged cause, intentional disability discrimination, fails to meet the policy's definition of "occurrence" as an "accident":

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Id.* § V(9).

In determining whether a complaint sufficiently alleges an "occurrence," "[t]he focus at all times, under Illinois law, is whether the *injury* was expected or intended by the [defendants], not whether the acts of the [defendants] were performed intentionally." *Calvert Ins. Co. v. Western Ins. Co.*, 874 F.2d 396, 399 (7th Cir.1989) (emphasis in original). Accordingly, an intentional act that causes an "unexpected or unintended result" may qualify for coverage under an occurrence clause. *Argento v. Village of Melrose Park*, 838 F.2d 1483, 1497 (7th Cir. 1988).

Specifically, "civil rights claims for intentional violations can fall under the definition of occurrence as long as the injuries incurred were not specifically intended or expected." *Id.* at 1498 (citing *Illinois Farmers Ins. Co. v. Preston*, 153 Ill.App.3d 644, 106 Ill.Dec. 552, 505 N.E.2d 1343 (1987)). In *Preston*, a school administrator alleged that a school official violated his constitutional rights by falsely accusing the administrator of misusing state funds and of being a "bad administrator." *Preston*, 106 Ill.Dec. at 554, 505 N.E.2d at 1345. In holding that the school official's actions could constitute an "accident" under the insurance policy, the court examined whether the administrator's alleged injuries were "unintended and unforeseen," that is, were "the natural and probable result of the insured's conduct." *Id.* Ultimately, the court concluded that a reasonable juror could find that the administrator's injuries—"severe emotional distress and high blood pressure"—were not the natural and probable result of the school official's conduct. *Id.* at 555, 505 N.E.2d at 1346. *Preston* suggests that if a "fair-minded person" could infer that the injuries "were not the natural and probable result" of the insured's conduct, there exists a potential for coverage, and the duty to defend is triggered. *See id.*

In light of *Preston*, we conclude that the *Ores* complaint sufficiently alleges injuries caused by an "occurrence." Specifically, the *Ores* complaint alleges that Image Control and Wojcik committed intentional acts— "adopted and took steps to advance the illegal actions of Willow West ... and undertook to disguise discriminatory statements, treatment and acts," *Ores* Compl. ¶ 20—that resulted in unexpected injuries. However, it was not Paul and Kirk Ores who suffered unexpected injuries [3]; the unexpected injuries alleged in the *Ores* complaint were inflicted on Warren Ores, Louise Ores, and Niemer. According to the complaint, Warren and Louise

> lost physical, financial and emotional independence and the opportunity to have piece [sic] of mind by knowing that their sons would be able to live independently and experience their own version of the American dream of home ownership be-

---

**3.** Paul and Kirk's alleged injuries cannot be labelled "unexpected": loss of the opportunity to use the financing funds to purchase the unit, loss of the opportunity to own the unit, and loss of "financial gain, independence, security, and mental anguish, humiliation, embarrassment, degradation, shame, and loss of civil rights," *Ores* Compl. ¶ 25, 39, are all "natural and probable result[s]" of the sort of intentional disability discrimination alleged in the *Ores* complaint.

Unlike *Preston*, where a reasonable juror could infer that severe emotional distress and high blood pressure were not the natural and probable results of the school official's false disparagement of the administrator's employment qualifications, 106 Ill.Dec. at 555, 505 N.E.2d at 1346, Paul and Kirk's alleged injuries are to be expected from *intentional discrimination based on mental disability.*

cause of the discriminatory actions of all Defendants....

*Id.* ¶ 33. In addition, Warren and Louise, and Niemer

have suffered and are continuing to suffer great and irreparable loss and injury, including but not limited to, financial gain, independence, security, and mental anguish, humiliation, embarrassment, degradation, shame, and loss of civil rights as a proximate result of the acts and conduct of the Defendants....

*Id.* ¶ 39. We express no opinion as to whether the Fair Housing Act provides for recovery of these novel injuries, such as a parent's loss of "physical, financial and emotional independence," but even if groundless, *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 545, 384 N.E.2d 335, 339 (1978), Commercial Union owes a duty to defend against these unexpected injuries.[4] Just as a "fair-minded person" could find that severe emotional distress and high blood pressure were unexpected consequences of the insults levelled in *Preston,* a fair-minded person could determine that the alleged injuries to Louise,

Warren, and Niemer were unexpected results of the discrimination directed at Paul and Kirk. Accordingly, as to Warren, Louise, and Niemer, the *Ores* complaint sufficiently alleges acts that potentially constitute an "occurrence" under the policy.[5]

## B. "Bodily Injury"

■ Even if the complaint alleges an "occurrence" as to Warren, Louise, and Niemer, Commercial Union maintains that the complaint fails to allege a covered "bodily injury" suffered by those three victims. We agree. As defined in the policy, " '[b]odily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Policy, § V(3). Under a plain and ordinary reading of the definition, "bodily" modifies each term: "injury," "sickness," *and* "disease." *Knapp v. Eagle Property Management Corp.,* 54 F.3d 1272, 1284 (7th Cir.1995) (construing identical definition under principles of construction similar to those applied in Illinois). Accordingly, bodily injury requires " 'actual physical injury' as opposed to broadening it

4. We point out, however, that Niemer's loss of broker's commissions is a natural and probable result of intentionally preventing Paul and Kirk from purchasing the unit; thus, Commercial Union's duty to defend does not rest on this injury.

5. We point out that the cases defining "occurrence" and "accident" to include unexpected results of intentional actions focus on one aspect—unexpected or unintended injury—of the definition of "occurrence" at issue in those cases. *See, e.g., Argento,* 838 F.2d at 1496 (" 'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured.") (emphasis added). The genesis of this focus on the nature of the *injury,* rather than on the nature of the injury's *cause,* springs at least in part from *Smith v. Moran,* 61 Ill.App.2d 157, 209 N.E.2d 18 (1965) (cited by *Bay State Ins. Co. v. Wilson,* 96 Ill.2d 487, 71 Ill.Dec. 726, 728, 451 N.E.2d 880, 882 (1983)), which construed a clause excluding coverage for "injury ... caused intentionally by ... the insured." *Id.* 209 N.E.2d at 19; *see also Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178, 1184, 1186 (7th Cir.), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980) (where definition requires that occurrence "unintentionally" results in personal injury, Title VII intentional gender discrimination claim not covered).

In the instant case, the Commercial Union policy simply defines occurrence as an "accident" and provides a separate exclusionary clause to deny coverage for " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured." Policy, § I(A)(2)(a). While it is consistent with the law of other states to construe "accident" to exclude volitional acts, *see, e.g., GATX Leasing Corp. v. National Union Fire Ins. Co.,* 64 F.3d 1112, 1117 (7th Cir.1995) (Texas law); *Fidelity and Guar. Ins. Underwriters v. Everett I. Brown Co.,* 25 F.3d 484, 488–90 (7th Cir.1994) (Indiana law); *Red Ball Leasing, Inc. v. Hartford Accident and Indem. Co.,* 915 F.2d 306, 311 (7th Cir.1990) (Indiana law), we hesitate to do so without further guidance from the Illinois Supreme Court. *Cf. United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 286, 578 N.E.2d 926, 932 (1991) (suggesting a distinction between the injury and the cause of injury in an occurrence clause, but not addressing line of cases involving unintended results of intentional acts). Even in cases involving a policy that defines occurrence as an accident and provides a separate exclusionary clause for unexpected injuries, the Illinois Appellate Court continues to examine the nature of the injury in order to define occurrence. *State Farm Fire & Cas. Co. v. Watters,* 268 Ill.App.3d 501, 205 Ill.Dec. 936, 939–40, 644 N.E.2d 492, 495–96 (1994), *appeal denied,* 161 Ill.2d 540, 208 Ill.Dec. 369, 649 N.E.2d 425 (1995).

to include mental anguish and mental distress." *See University of Illinois v. Continental Cas. Co.*, 234 Ill.App.3d 340, 175 Ill. Dec. 324, 339, 599 N.E.2d 1338, 1353, *appeal denied*, 147 Ill.2d 637, 180 Ill.Dec. 158, 606 N.E.2d 1235 (1992).[6] Because the second amended complaint fails to allege bodily injury suffered by Warren, Louise, or Niemer,[7] the duty to defend is not triggered by coverage for bodily injury. *Knapp*, 54 F.3d at 1285.[8]

## C. "Property Damage"

■ Next, Commercial Union argues that, even if Warren, Louise, and Niemer alleged an "occurrence," they did not suffer "property damage" as defined under the policy.[9] In pertinent part, the policy defines "property damage" as "[l]oss of use of tangible property that is not physically injured." Policy, § V(12)(b). Loss of use of tangible property does not include, however, economic losses such as lost profits or lost financial interests. *CMO Graphics, Inc. v. CNA Ins.*, 115 Ill. App.3d 491, 71 Ill.Dec. 172, 175–76, 450 N.E.2d 860, 863–64 (1983); *W.E. O'Neil & Constr. Co. v. National Union Fire Ins. Co.*, 721 F.Supp. 984, 994 (N.D.Ill.1989). "Loss of use [of tangible property] as distinguished from loss of profits is the loss of the right to use property which is an incident of ownership." *Gibraltar Cas. Co. v. Sargent & Lundy*, 214 Ill.App.3d 768, 158 Ill.Dec. 551, 558, 574 N.E.2d 664, 671 (1990), *appeal denied*, 141 Ill.2d 540, 162 Ill.Dec. 487, 580 N.E.2d 113 (1991).

■ As to Niemer, she fails to allege "property damage" under the policy. In the complaint, Niemer merely alleges lost broker's commissions, and such lost profits do not constitute "property damage." *See CMO Graphics*, 71 Ill.Dec. at 175–76, 450 N.E.2d at 863–64.

■ As to Warren and Louise, Image Control contends that the parents "appear" to allege loss of use of tangible property; specifically, the loss of use of portions of their home.[10] Image Control Br. at 9. However, even when read with the utmost liberality, the complaint fails to allege such property damage. Image Control points to the parents' allegation that they "lost physical, financial and emotional independence" due to the defendants' discrimination. *Ores* Compl. ¶ 33. This allegation simply does not articulate that Warren and Louise lost the use of parts of their home. Nor does the context of the allegation support Image Control's interpretation that loss of physical and financial "independence" means loss of the use of the family home. *See id.* Beyond explaining that Paul and Kirk currently reside with their parents, *id.* ¶¶ 2–5, the remainder of the complaint contains no suggestion that Warren and Louise are seeking to recover

---

6. The case relied upon by the Oreses and Niemer, *Kufalk v. Hart*, 636 F.Supp. 309 (N.D.Ill. 1986), is consistent with requiring physical injury; the underlying complaint in *Kufalk* did in fact allege physical injuries. *Id.* at 311. Indeed, the court in *Kufalk* expressly noted that the few cases construing the term "bodily injury" refused to include emotional distress within the definition. *Id.*

7. Similarly, Paul and Kirk fail to allege "bodily injury" in the complaint. Thus, even if Paul and Kirk had sufficiently alleged an "occurrence," Commercial Union's duty to defend would not be triggered by coverage for "bodily injury."

8. In light of the complaint's failure to allege physical injury, we need not decide whether emotional distress falls within the definition of bodily injury when the distress is manifested by physical injury. *See Knapp*, 54 F.3d at 1285.

9. Because we have already held that Paul and Kirk failed to allege that an "occurrence" caused

them injury, *see infra* Part III(A), the two brothers cannot trigger Commercial Union's duty to defend under the "property damage" provision. Even if Paul and Kirk had adequately alleged an "occurrence," we would hold that they did not suffer "property damage"; they had no property interest in the condominium unit, and thus did not lose the use of tangible property. *Gibraltar Cas. Co. v. Sargent & Lundy*, 214 Ill.App.3d 768, 158 Ill.Dec. 551, 558, 574 N.E.2d 664, 671 (1990) ("[l]oss of use is the loss of the *right* to use property which is an incident of ownership.") (emphasis added), *appeal denied*, 141 Ill.2d 540, 162 Ill.Dec. 487, 580 N.E.2d 113 (1991).

10. To the extent that Image Control argues that Warren and Louise's lost funds because they were forced to continue to support Paul and Kirk, we hold that such economic losses do not constitute "property damage." *See CMO Graphics*, 71 Ill.Dec. at 175–76, 450 N.E.2d at 863–64.

for partial loss of the use of their home.[11] Accordingly, Warren and Louise have failed to allege "property damage" under the policy. Thus, Commercial Union's duty to defend is not triggered by the coverage for "property damage."[12]

### D. Personal Injury

■ Finally, Image Control seeks to invoke Commercial Union's duty to defend under the policy's coverage for "personal injury."[13] The insurance policy provides coverage for "'personal injury' caused by an offense arising out of your business." Policy, § I(B)(1)(b)(1). In support of its argument, Image Control points to three categories of "personal injury":

"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

. . . .

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization . . . ; or

e. Oral or written publication of material that violates a person's right of privacy.

Policy, § V(10)(c)-(e).

First, Image Control argues that the underlying discrimination complaint adequately alleges that the defendants committed an "invasion" of Paul and Kirk's "right of private occupancy." However, we agree with the holding in *Martin v. Brunzelle*, 699 F.Supp. 167 (N.D.Ill.1988), in which Judge Shadur explained why a racially discriminatory refusal to lease an apartment does not constitute an "invasion of the right of private occupancy," *id.* at 168. When read in context with the terms "wrongful entry" and "wrongful eviction," the "right" of private occupancy is limited:

Though [the plaintiff] was entitled not to be discriminated in her [housing] application, that is not at all the same as a "right" to occupy: an enforceable claim to occupancy (to the exclusion of . . . anyone else).

*Id.* at 170. Thus, housing discrimination does not fall within coverage for an "invasion" into the "right of private occupancy." *Id.* at 170–71.[14]

■ Second, Image Control maintains that a liberal reading of the *Ores* complaint reveals an allegation of slander or libel, pointing to the *Ores* plaintiffs' allegations that they were humiliated and degraded. *Ores* Compl. ¶ 39. However, these allegations of emotional suffering do not articulate a defamation claim. *Krasinski v. United Parcel Serv.*, 124 Ill.2d 483, 125 Ill.Dec. 310, 313, 530 N.E.2d 468, 471 (1988) (defamation claim requires false statement concerning plaintiff, unprivileged publication to third party with fault by defendant, and damage caused by publication); *see also Rosner v. Field Enter., Inc.*, 205 Ill.App.3d 769, 151

11. Image Control does assert in its brief that Louise Ores "testified that because Paul and Kirk Ores did not purchase the condominium they lost physical independence." Image Control Br. at 9. Whatever value Louise's deposition testimony might have, Image Control failed to attach a transcript or otherwise support the factual assertion in a Local Rule 12(M) or 12(N) statement. We thus decline to consider the testimony in determining whether the Oreses sufficiently alleged "property damage."

12. In light of this conclusion, we refrain from addressing Commercial Union's alternative argument, that a "Real Estate Property Managed" endorsement applies to exclude coverage for "property damage" arising from the condominium unit. We note, however, that the parties failed to specify where in their exhibits this endorsement appears and failed to paginate the exhibit containing the insurance policy; after lengthy searching, the endorsement was found on the fifth page from the last page of the exhibit. Pl.'s 12(M), Exhibit A.

13. Image Control also relies on the policy's coverage for "advertising injury," but only to the extent that such coverage is encompassed by coverage for "personal injury."

14. *Accord Bernstein v. North East Ins. Co.*, 19 F.3d 1456, 1458 (D.C.Cir.1994); *Boston Housing Auth. v. Atlanta Int'l Ins. Co.*, 781 F.Supp. 80, 84 (D.Mass.1992); *cf. Red Ball Leasing*, 915 F.2d at 312; *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1041 (7th Cir. 1992). *But see Gardner v. Romano*, 688 F.Supp. 489, 493 (E.D.Wis.1988); *State Farm Fire & Cas. Co. v. Westchester Inv. Co.*, 721 F.Supp. 1165, 1168 (C.D.Cal.1989).

Ill.Dec. 154, 166, 564 N.E.2d 131, 143 (1990) (defamation per se), *appeal denied,* 137 Ill.2d 672, 156 Ill.Dec. 569, 571 N.E.2d 156 (1991).

[ ] Lastly, Image Control argues that the *Ores* complaint alleges injury arising out of the defendants' invasion of the plaintiffs' "right[s] of privacy." Specifically, Image Control points to the allegations stating that the defendants sought to "visually observe and interview" Paul and Kirk, and that the defendants made discriminatory inquiries into Paul and Kirk's prospective purchase. However, "right" means a legally enforceable claim, *cf. Martin,* 699 F.Supp. at 170, and the allegations relied upon by Image Control do not fall within any of the four "right of privacy" torts. *See Lovgren v. Citizens First Nat'l Bank,* 126 Ill.2d 411, 128 Ill.Dec. 542, 543, 534 N.E.2d 987, 988 (1989).[15] Moreover, the policy only covers "[o]ral or written publication of material" that violates a right of privacy. Policy, § V(10)(e). The underlying complaint fails to allege injury arising from such publication. In sum, we conclude that the *Ores* complaint does not come within, or potentially within, coverage for bodily injury, property damage, and personal injury. Accordingly, Commercial Union owes no duty to defend and no duty to indemnify [16] against the allegations in the second amended complaint. We grant Commercial Union's motion for summary judgment, and concomitantly, we deny Image Control's cross-motion.

## IV. Conclusion

For the reasons set forth above, we grant Commercial Union's motion for summary judgment, and deny Image Control's cross-motion. It is so ordered.

---

15. There exists conflicting authority as to whether Illinois law recognizes the privacy tort based on intrusion into a person's seclusion. *Dwyer v. American Express Co.,* 273 Ill.App.3d 742, 210 Ill.Dec. 375, 379, 652 N.E.2d 1351, 1355 (1995).

16. Because the duty to defend is broader than the duty to indemnify, we may also conclude that Commercial Union does not owe a duty to in-

demnify Image Control on the facts alleged in the second amended complaint. *See Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 189 Ill.Dec. 756, 764, 620 N.E.2d 1073, 1081 (1993); *Houston General Ins. Corp. v. BSM Corp.,* 843 F.Supp. 1264, 1266–67 (N.D.Ill. 1994).